UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00159-RJC

| | |
|---|---|
| PAMELA RAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 12, 14). Having fully considered the written arguments, administrative record, and applicable authority, the Court grants Plaintiff's Motion for Summary Judgment and remands this matter for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff Pamela Ray ("Ms. Ray") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Ms. Ray filed her application for disability insurance benefits on May 24, 2019, with an alleged onset date of March 12, 2019. (Tr.[1] 10).

In denying Ms. Ray's social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 15–35). At step one, the ALJ found that Ms. Ray had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 18). At step two, the ALJ found that Ms. Ray had the following combination of severe impairments: epilepsy, degenerative disc disease,

---
[1] Citations to "Tr." throughout the Order refer to the administrative record at DE 10.

1

Case 1:21-cv-00159-RJC   Document 16   Filed 08/15/22   Page 1 of 10

neurocognitive disorder, temporomandibular joint disorder, depressive disorder, and anxiety disorder. (*Id.*). The ALJ also noted that Ms. Ray had been diagnosed with osteopenia and a thyroid deficiency. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 18–24). Before moving to step four, the ALJ found that Ms. Ray had the residual functional capacity ("RFC") to perform medium work as explained below:

> [T]he claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she can frequently climb ramps or stairs frequently [sic] but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. She should avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards. She cannot operate a motor vehicle on the job. The claimant can perform simple tasks with customary breaks and few changes in a routine work setting. She can have occasional interaction with the general public, coworkers, and supervisors, but with no tandem or group tasks required.

(*Id.* at 24). At step four, the ALJ found that Ms. Ray could not perform any past relevant work but found at step five that Ms. Ray could perform jobs that exist in significant numbers in the national economy. (*Id.* at 33–35).

After exhausting her administrative remedies, Ms. Ray brought the instant action for review of Defendant's decision denying her application for disability insurance benefits under Title II of the Social Security Act. (DE 1).

## II.   STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District

Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Plaintiff raises three challenges: (1) the ALJ failed to account for her chronic headaches, (2) the structure of the Social Security Administration is unconstitutional, and (3) the ALJ was not validly appointed. Remand is warranted based on Plaintiff's first challenge.

Plaintiff contends the ALJ erred by failing to account for her chronic headaches as an impairment at step two. Plaintiff further contends that, regardless of the error at step two, the ALJ failed to support the RFC with substantial evidence because the ALJ did not explain why there was no accommodation for Plaintiff's headaches.

At step two of the sequential evaluation, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is deemed "severe" if it "significantly limits [the claimant's] physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1520(c); SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). "Basic work activities" refers to the "abilities and aptitudes to do most jobs," which include standing, walking, lifting, or responding to other people, using judgment, and dealing with common workplace situations. SSR 85-28, 1985 WL 56856 (Jan. 1, 1985). An impairment is deemed "'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citation omitted). "Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered." SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).

After determining a claimant's impairments and whether the impairments, alone or in combination, meet or exceed a listed impairment, the ALJ must then determine the RFC. A claimant's RFC is an assessment of the "most [an individual] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC assessment requires a "narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). In particular, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). "The second component, the ALJ's logical explanation, is just as important as the other two." *Id.* Accordingly, "[t]o pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas v. Cmm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)) (internal citation omitted).

Here, Plaintiff testified that she has "real bad headaches" but does not know why she has these headaches. (Tr. 52). Plaintiff further testified that her neurologist performed multiple brain scans and found "little brain bleeds . . . which could become a brain aneurysm at some point." (*Id.*). Plaintiff's chronic headaches are well documented throughout her medical records.[2] Of

---

[2] Tr. 969–970 (headaches noted on Aug. 25, 2017, and Sept. 18, 2017); 961 (headache noted on Jan. 26, 2018); 471 (headaches for four years noted on May 18, 2018); 1474 (constant headache for three days that was worsening noted on May 21, 2018; oxycodone provided only mild relief); 1435 (CT scan performed for intractable headache on May 22, 2018; no abnormalities were detected); 1541 (ER report where chief complaint was a headache on June 30, 2018); 355 (headache on right side of head noted on Oct. 24, 2018); 1017, 1034 (hospital discharge papers from Nov. 2018 noted Plaintiff suffered from "chronic headaches"); 342 (headache noted as an associate symptom of Plaintiff's TMJ on Feb. 26, 2019); 1137 ("abnormal MRI with right temporal lobe abnormality suspicious for HSV encephalitis and/or mass" noted on Mar. 15, 2019); 1147 (Plaintiff complained of headache); 1219 (abnormal MRI and headaches noted on discharge paperwork from Mar. 26, 2019); 1256, 1258 (therapy was "limited by headache during eval" on Mar. 22, 2019, and therapist noted Plaintiff has "significant headaches;" Plaintiff complained "my head is going to explode"); 1263–65 (discharge summary from April 4, 2019 noted Plaintiff suffered from "chronic headache" and that "she continued to have headaches during admission despite multiple medications trials with Neurology"); 1286 (consult on March 30, 2019 noted "she continues to have severe headaches"); 1355 (discharge paperwork from April 13, 2019 noted Plaintiff suffered from acute and chronic headaches and noted she had a "brain MRI abnormality"); 656–60 (Plaintiff presented "with acute on chronic headaches" on May 18, 2019; CT scan found "atrophy and evidence of small vessel ischemic disease"); 635 (on July 31, 2019 an MRI was "most consistent with left mesial temporal sclerosis" and found "mild nonspecific white matter changes, possibly related to old small vessel ischemic disease); 483 (treatment notes from Aug. 5, 2019 noted Plaintiff "suffers from chronic headaches"); 1578 (Plaintiff presented "with acute onset of right temporal headache" on Nov. 15, 2019); 597–98 (Plaintiff presented to neurology complaining of "intractable right-sided headache" on Jan. 31, 2020 which neurology noted as "chronic"); 605 (ER report from Mar. 7, 2020 noted "headache primarily on the right side of her head and around the TMJ"); 1566–67 (Urgent Care notes from Mar. 10, 2020 found Plaintiff complained "it was the worst headache of my life"); 1613–14 (Plaintiff presented with 48-hour headache that resolved in the ER on May 21, 2020; "Patient has had multiple episodes in the past effusion associated with her headaches. Consider complex migraine"); 1610 (ER report from July 2, 2020 noted Plaintiff presented with a 3-day headache and noted she had "chronic intermittent headaches"); 65 (on Aug. 3, 2020, Mission Neurology indicated Plaintiff had 3 headaches per month over the last 1.5 years).

5

note, Plaintiff presented to the ER and was admitted on multiple occasions for headaches, among other issues; multiple providers noted that Plaintiff suffered from chronic headaches; and MRI scans revealed neurological abnormalities in the brain including possible encephalitis, small vessel ischemic disease, and mesial temporal sclerosis.

However, the ALJ did not discuss whether Plaintiff's headaches were an impairment at step two, nor did the ALJ address Plaintiff's headaches when determining the RFC. Instead, the ALJ's decision only mentions that Plaintiff testified "that she had bad headaches" but "that she did not know what caused them;" that Plaintiff presented to the ER on May 18, 2019 complaining of a right frontal headache; that Plaintiff presented to the ER on July 2, 2020 complaining of a three day old headache that was alleviated with pain medication; and that Plaintiff presented to My Care Now on March 10, 2020 complaining of a headache. (Tr. 19, 21, 25–26). However, the passing mentions to Plaintiff's headaches are in a discussion involving Plaintiff's epilepsy impairment and degenerative disc disease impairment. The ALJ provided no explanation or conclusion, at step two or in the RFC determination, on why Plaintiff's headaches were not an impairment and did not require an accommodation.

This prevents meaningful review and warrants remand for numerous reasons. First, headaches can be a severe or non-severe impairment, however without any explanation the Court cannot meaningfully review the ALJ's decision at step two. *Royall v. Berryhill*, No. 5:17-CV-161, 2018 WL 3620499, at *4 (W.D.N.C. July 30, 2018) (finding headaches were a non-severe impairment); *Emanuele v. Kijakzi*, No. 1:21-CV-00039-FDW-DSC, 2022 WL 2392873, at *1 (W.D.N.C. July 1, 2022) (finding headaches were a severe impairment). However, this alone does not warrant remand as "the impact of an error at step two is mitigated and rendered harmless where the adjudicator proceeds to step three and considers all impairments as part of the RFC analysis."

6

Case 1:21-cv-00159-RJC   Document 16   Filed 08/15/22   Page 6 of 10

*Palmer v. Colvin*, No. 5:16-CV-00065-MOC, 2016 WL 7223450, at *4 (W.D.N.C. Dec. 13, 2016).

Second, as previously explained, the ALJ also failed to analyze or explain Plaintiff's chronic headaches in the RFC analysis. Accordingly, the ALJ's error at step two was compounded, rather than mitigated, in the RFC discussion because the Court cannot engage in meaningful review when an ALJ fails to adequately lay out his reasons. *See Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018) ("[T]he ALJ must adequately explain his reasoning; otherwise, we cannot engage in meaningful review."); *see also Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 663 (4th Cir. 2017) ("Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable.).

Third, case law confirms that remand is warranted. For example, a district court remanded when the ALJ failed to explain how plaintiff's history of headaches was accounted for in the RFC. *Porterfield v. Berryhill*, No. 1:18-cv-319-TDS-JLW, slip op. at 6–7 (M.D.N.C. Aug. 6, 2019). In a similar case, the ALJ failed to discuss certain diagnosed conditions at step two or in the RFC, and the district court issued remand, finding:

> While an error at step two is harmless when an ALJ identifies other severe impairments, proceeds past step two, and considers the effects of all the claimant's impairments through the remainder of the sequential evaluation, it is not clear from the written determination that the ALJ undertook such an analysis . . . In sum, the ALJ failed to adequately explain why he did not find Plaintiff's [diagnosed conditions] to be severe or non-severe impairments. Further, the record is not clear as to whether the ALJ considered the effects or symptoms of these diagnoses in formulating the RFC. Accordingly, remand is required on this basis, and on remand, the ALJ should adequately explain the basis for his step two determination.

*Jaleesa H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01180 EAW, 2022 WL 174337, at *4 (W.D.N.Y. Jan. 18, 2022). Moreover, the ALJ here failed to provide an explanation to discount Plaintiff's history of chronic headaches. *Palmer v. Colvin*, 2016 WL 7223450, at *4 (finding no error when ALJ's failed to include RFC limitation for headaches when the ALJ explained his reasoning based

on the medical records); *Emanuele*, 2022 WL 2392873, at *4 (finding no error when ALJ explained the headaches were improving); *Chapman v. Astrue*, No. 1:11-CV-308-MR-DCK, 2012 WL 6851103, at *5 (W.D.N.C. Dec. 21, 2012), *report and recommendation adopted*, No. 1:11-CV-00308-MR-DCK, 2013 WL 145748 (W.D.N.C. Jan. 14, 2013) (finding no error when ALJ explained the headaches were controlled by medication). The present case is thus akin to cases in the Western District that were remanded after "the ALJ provide[d] little, if any, explanation of [] Plaintiff's . . . migraines." *Campbell v. Kijakazi*, No. 3:20-CV-692-DCK, 2022 WL 2293357, at *5 (W.D.N.C. June 24, 2022); *Metcalf v. Berryhill*, No. 1:17-CV-00184-MR, 2018 WL 4620623, at *5 (W.D.N.C. Sept. 26, 2018).

Fourth, Defendant's arguments are without merit. Defendant first argues that Plaintiff's headaches are not a medically determinable impairment because the headaches did not last continually for twelve months. As support, Defendant generally cites to 42 U.S.C. § 423(d)(2) for the proposition that a medically determinable impairment should "last for a continuous period of not less than 12 months." However, a claimant "does not have to show a 12 month period of impairment unmarred by any symptom-free interval." *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (finding an "impairment which manifests itself from time to time over a long-term period is not inconsistent with the language of the statute"). Moreover, courts routinely find headaches disabling, and the Undersigned has yet to learn of a year long headache. *See, e.g.*, *Emanuele*, 2022 WL 2392873, at *1 (finding headaches were a severe impairment). Defendant next argues that Plaintiff's headaches began before the alleged onset date, which prevents the ALJ from having to address this issue. Tellingly, Defendant cites to no support for this proposition. Nor is this Court aware of any regulations that allow ALJ's to overlook impairments because they started before the onset date. Instead, ALJs look at the totality of a claimant's impairments as of

8

the onset date to determine whether any impairment, alone or in combination with other impairments, prevents the claimant from working. 20 C.F.R. § 404.1520. Defendant's final argument, that on one ER visit the Plaintiff's headache resolved after she received pain medicine, improperly cherry-picks evidence. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (*quoting Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."). While the ER helped Plaintiff on one occasion, the medical records reveal countless other ER visits and hospital admissions where doctors were unable to alleviate Plaintiff's headaches. Moreover, Defendant fails to address the abnormal MRI and CT scans of Plaintiff's brain. Accordingly, Defendant's arguments cannot overcome the deficiencies in the ALJ's decision.

By ordering remand, the Court does not forecast a decision on the merits of Plaintiff's application for disability benefits. *See Patterson*, 846 F.3d at 663. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 12), is **GRANTED**;
2. Defendant's Motion for Summary Judgment, (DE 14), is **DENIED**; and
3. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

9

Case 1:21-cv-00159-RJC   Document 16   Filed 08/15/22   Page 9 of 10

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 15, 2022

Robert J. Conrad, Jr.
United States District Judge